**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| **TONYA COFFMAN,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| Vs. | )    Case No. 1:05-cv-0199-RLY-VSS |
| | ) |
| **INDIANPOLIS FIRE** | ) |
| **DEPARTMENT,** and | ) |
| | ) |
| **Mickey Radez,** | ) |
| **Charles I. Miller,** | ) |
| and **Al Stovall** | ) |
| | ) |
| Defendants. | ) |

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, by counsel, files her amended complaint for damages and injunctive relief suing Defendants, Indianapolis Fire Department, Mickey Radez, Charles I. Miller, and Al Stovall as follows:

This action is for damages and to redress defendant Indianapolis Fire Department's ("IFD") discrimination and harassment of plaintiff, Tonya Coffman ("Coffman"), because of her gender in violation of Title VII of the Civil Rights Act of 1964, *42 U.S.C § 2000 et seq,* as amended; Defendant's discrimination against Plaintiff by forcing her to undergo an impermissible mental examination in violation of the Americans with Disabilities Act, *42 U.S.C. § 12101 et seq*; and Defendant's retaliation against Plaintiff for having exercised her rights to access personnel related records under Indiana's Access to

Public Records law, IC 5-14-3 *et seq.*   Further, Plaintiff
brings an action through 42 U.S.C. § 1983 against Defendant
Mickey Radez for his unlawful violation of Plaintiff's
Fourteenth Amendment constitutional right to privacy by ordering
Plaintiff to undergo a mental examination or face disciplinary
action; Defendant Charles Miller's violation of Plaintiff's
Fourteenth Amendment constitutional right to privacy by
recommending to the approving authority, Deputy Chief Mickey
Radez, that Plaintiff undergo a mental examination; Defendant Al
Stovall's violation of Plaintiff's Fourteenth Amendment
constitutional right to privacy and due process by ordering
Plaintiff to participate in the Employee Assistance Program or
face discipline and ordering her to undergo an unwarranted drug
test.

Plaintiff is also filing a state claim under the *Frampton*
doctrine against Defendants for retaliating against her for
exercising her statutory rights under state law when she
requested her personnel records and sought the assistance of the
Indiana State Open Records Counselor in obtaining her records
which she was legally entitled to.

Plaintiff seeks compensatory damages for emotional harm and
humiliation from the discrimination, harassment, and retaliation
by defendant, for medical expenses, for other consequential

harm, and legal fees and costs.  Plaintiff also seeks injunctive relief.

**PARTIES**

1.   Coffman, a female, is an employee of defendant and an adult citizen and resident in the Southern District of Indiana at all times relevant to this action.

2.   Defendant, Indianapolis Fire Department, is a city of Indianapolis entity which is located in the Southern District of Indiana.

3.   Defendant Mickey Radez is an employee of the Indianapolis Fire Department and held the position of Deputy Fire Chief at all times relevant to this action.

4.   Defendant Charles I. Miller is an employee of the Indianapolis Fire Department and held the position of Battalion Commander at all times relevant to this action.

5.   Defendant Al Stovall is an employee of the Indianapolis Fire Department and held the position of Battalion Commander at all times relevant to this action.

**JURISDICTION**

6.   The Court has jurisdiction over this proceeding pursuant to *42 U.S.C. § 2000e-5(f)(3) (Title VII), 42 U.S.C. § 12101,*

*et seq,* and *42 U.S.C. § 1983.* In addition jurisdiction is invoked pursuant to *28 U.S.C. §§ 1331 and 1343.*

7. Plaintiff has satisfied her obligation to exhaust her administrative remedies as required under *42 U.S.C. § 2000 et seq* and *42 U.S.C. 12101 et seq* by timely filing a charge of discrimination with the Equal Employment Opportunity Commission, EEOC Charge Number 240-2004-06937, alleging sex and disability discrimination.

8. Plaintiff has timely filed this action within ninety (90) days of receipt of her Notice of Right to Sue from the EEOC.

9. At all times relevant to this action, plaintiff was an employee of the Indianapolis Fire Department.

10. At all times relevant to this action Defendant had more than fifteen employees.

11. At all times relevant Defendant was an "employer" as provided in 42 U.S.C. § 2000e(b) and 42 U.S.C. 12101 *et seq*.

12. All individual Defendants are being sued in their individual capacities.

13. All events pertinent to this action occurred in the Southern District of Indiana; venue is proper in this court.

**FACTS**

14. Coffman, a female, commenced her employment with IFD as a firefighter on or about April 4, 2001.

15. Upon employment with IFD, Coffman was certified as a qualified engineer by the state of Indiana which qualified her to drive IFD's fire vehicles of various types and sizes.

16. On or about October 21, 2003, Coffman became qualified as a paramedic sufficient to perform paramedic duties for IFD.

17. Because of IFD's practices of work assignments, Coffman was assigned on a rotating basis to various fire stations throughout IFD's jurisdiction.

18. Up until approximately October 2003, Coffman had no notice from IFD of any performance deficiencies.

19. In late October 2003, Rick Longerich, a Deputy Fire Chief with IFD, suspended Coffman from driving any IFD fire fighting apparatus (vehicles) until further notice.

20. On or about December 19, 2003, Defendant humiliated Coffman by requiring her to undergo a driving evaluation for the purpose of evaluating Coffman's ability to reach the operating pedals and the steering wheel of IFD's fire vehicles.

21. Coffman successfully passed the driving evaluation.

22.  On or about January 25, 2004, Randy Deckard, a co-worker of
     Coffman was riding with Coffman while she was driving a
     fire vehicle.

23.  Deckard questioned Coffman as to whether her feet could
     reach the operating pedals of the vehicle.

24.  Deckard complained to IFD officials about Coffman's driving
     abilities but failed to inform officials that it had been
     snowing heavily on January 25, 2004.

25.  From November 2003 to early April 2004 Coffman questioned
     various IFD officials, including Randy Deckard, Deputy
     Chief Charles Miller, Deputy Chief Rick Longerich, and
     Deputy Chief Mickey Radez, Captain Julia Baade and Chief
     Pitts about why she was being harassed and why her driving
     skills were being questioned.

26.  During that same period Defendants began to question
     Coffman's paramedic skills

27.  From November 2003 to early April 2004 Coffman questioned
     various IFD officials, including Randy Deckard, Deputy
     Chief Charles Miller, Deputy Chief Rick Longerich, and
     Deputy Chief Mickey Radez, Captain Julia Baade and Chief
     Pitts about why her paramedic abilities were being
     questioned.

28.  No IFD official provided any documentation or explanation to Coffman until Coffman began invoking her right to obtain documents under Indiana Access to Public Records statute.

29.  On or about December 17 2003, pursuant to the Indiana Access to Public Records Act, IC 5-14-3-1, *et seq,* Coffman requested IFD official, Deputy Chief Rick Longerich, provide a copy of any and all written records pertaining to Coffman in the possession of IFD.

30.  IFD refused to provide Coffman the requested documents.

31.  IFD continued to refuse to provide Coffman any documents or explanation about why her driving abilities were being questioned.

32.  On or about January 28, 2004, Private Randy Deckard, a male co-worker of Coffman, e-mailed a complaint against Coffman, complaining that, on January 25, 2004, he rode with Coffman and as a result of riding with her that day, he had "a few safety concerns. . . with her driving."

33.  Deckard omitted the fact that it was snowing heavily that day, misleading the recipient of the e-mail into believing that there were no environmental factors which affected Coffman's driving on January 25, 2004.

34.  Coffman did not learn of Deckard's e-mail until on or about February 11, 2004.

35.  On or about March 11, 2004, Coffman asked for a meeting
     with Captain Baade and Chief Pitts to rebut Deckard's e-
     mail and to again question why her driving abilities were
     being questioned.

36.  Prior to Coffman's e-mail which requested a meeting, no IFD
     official asked Coffman for her version of events on January
     25, 2004.

37.  Coffman met with Chief Pitts, Captain Baade, the union
     representative, Teddy Waldroup, and Randy Deckard in late
     March 2004.

38.  At the meeting Coffman explained that it had been snowing
     heavily on January 25, 2004, that Deckard had been giving
     her the cold shoulder all day and he did not like her or
     treat her with any respect even though that was the first
     day they had worked together.

39.  Despite Coffman's explanation, Chief Pitts ordered Coffman
     to undergo yet another driving evaluation under Captain
     Baade in early April, 2004.

40.  Coffman again objected to this forced driving evaluation
     but Chief Pitts ordered Coffman to undergo the evaluation
     anyway.

41.  Coffman complied with the order from Chief Pitts out of
     fear of losing her job.

42.  Coffman passed the evaluation.

43.  Concurrent with the driving evaluation, Defendant also
     began to question Coffman's paramedic skills despite the
     fact Coffman had already passed her paramedic certification
     requirements administered by the state of Indiana in
     October 2003.

44.  In early April 2004, Coffman was assigned to Station 13 and
     on or about April 12, 2004, was required to undergo an
     evaluation of her paramedic skills conducted by Lieutenant
     Rumple, firefighter/paramedic for squad 13.

45.  IFD did not disclose the results of the evaluation to
     Coffman.

46.  On or about April 9, 2004, Lieutenant Greg Robinson wrote
     Chief Miller and expressed concern about Coffman's "mental
     well being" despite the fact that Robinson had only worked
     with her one day.

47.  On or about April 9, 2004, Captain Brian Black also wrote
     an e-mail (addressee unknown) implying that Coffman needed
     to undergo a fitness for duty evaluation.

48.  On or about April 10, 2004, Deputy Chief Mickey Radez
     recommended via e-mail to Chief Stovall, Defendant's Human
     Resources Division, that Coffman undergo a fitness for duty
     evaluation.

49.  In the same e-mail, Deputy Chief Radez noted that "Any B/C
     (Battalion Chief) can recommend for a Fitness for Duty to

our Human Resource Division (Chief Stovall) and our remedial training from the appropriate Division (EMS, Training, etc)."  Deputy Chief Radez sent a copy of this e-mail to Battalion Chief Charles Miller.

50.  On or about April 11, 2004, pursuant to Deputy Chief Radez's e-mail to Battalion Chief Charles Miller of April 10, Miller made a formal recommendation to Division Chief Rick Longerich that Coffman "be referred to the proper agency for a fitness for duty psychological evaluation" as well as undergoing more training in EMS procedures and driving fire vehicles.

51.  On April 19, 2004, Deputy Chief Mickey Radez, via e-mail to Deputy Chief Rick Longerich, ordered Coffman to undergo a fitness for duty evaluation at the Institute for Public Safety Personnel, Inc. (IPSP) and directed Deputy Chief Rick Longerich to oversee Coffman's "issues" involving her EMS and Suppression training.

52.  On April 21, 2004, Dr. Barthlow of IPSP asked Coffman to sign a waiver of confidentiality so as to be able to release the results of the mental evaluation to IFD. Coffman asked Dr. Barthlow what would happen if she did not sign the waiver; Dr. Barthlow told Coffman the fitness for duty evaluation would not proceed.

53. Coffman feared she would be disciplined for insubordination if she did not undergo the fitness for duty evaluation as ordered by Deputy Chief Radez.

54. On April 21, 2004, Dr. Barthlow administered the mental examination to Coffman and recommended Coffman be placed on a "light duty" status.

55. On or about May 3, 2004, Battalion Chief Al Stovall ordered Coffman to undergo a medical examination in the form of a urinalysis.

56. The urinalysis was negative for drugs.

57. On May 13, 2005, IFD official, Battalion Chief Al Stovall, ordered Coffman to participate in its Employee Assistance Program(EAP) or face disciplinary action and required Coffman to use her sick leave time to undergo the EAP sessions.

58. On May 20, 2004, Coffman sent to Lora Lex of Human Resources, Deputy Chief Radez, and Deputy Chief Longerich, another request for documents pertaining to "decisions you have made concerning her employment" and attached an opinion from Michael Hurst, Indiana state Public Access Counselor which opined that IFD was required to release the requested records to her.

59. On June 10, 2004, Dr. William A. Shipley of the White River Psychology, Inc. (EAP provider) wrote to Battalion Chief

Stovall, "I have not noted any intellectual or emotional difficulties which would interfere with her ability to perform her job."

60. Between June 10 and June 21, 2004, Defendant ordered Coffman to undergo another fitness for duty evaluation mental examination.

61. On June 21, 2004, Dr. Barthlow of IPSP, administered another fitness for duty evaluation on Coffman, this time declaring Coffman **not** fit for duty.

**COUNT I**

**TITLE VII VIOLATION**

Plaintiff incorporates by reference paragraphs 1 – 61 above.

62. Plaintiff is a member of a protected class under Title VII of the Civil Rights Act of 1964.  She is female.

63. Despite holding a valid Engineer certificate issued by the State of Indiana which certified she was qualified to operate all IFD's fire vehicles Plaintiff was treated differently than similarly situated males in that Defendant required her to undergo driving evaluations.

64. Over the course of many months from October 2003 to April 2004, she was harassed about her driving and paramedic skills by IFD officials and male co-workers because of her gender, female.

65.  Despite her protests and claims of discriminatory conduct, Defendant continued to harass Plaintiff about her driving and paramedic skills.

66.  Defendant serially referred Coffman to mandatory fitness for duty evaluations from April 2004 to September 2004 because of her gender, female.

67.  Similarly situated males who displayed symptoms of mental and emotional instability were not referred to fitness for duty evaluations.

68.  Similarly situated males who displayed symptoms of mental and/or emotional instability were not referred to Defendant's Employee Assistance Program.

### COUNT II

### AMERICANS WITH DISABILITIES ACT

Plaintiff incorporates by reference paragraphs 1 – 68 above.

69.  On April 10, 2004, Defendant referred Coffman to a mental examination without the requisite justification of business necessity.

70.  Plaintiff engaged in no conduct nor displayed any symptoms of a mental disorder sufficient to warrant a mental examination.

71.  On or about April 10, 2004, Deputy Chief Mickey Radez recommended to Battalion Chief Al Stovall that Plaintiff

13

undergo a fitness for duty mental examination and notified other third parties, including Battalion Chief Charles Miller who had no personal knowledge of Plaintiff's condition, of the recommendation.

72. On or about April 11, 2004, Battalion Chief Charles Miller recommended to Deputy Chief Rick Lonerich that Plaintiff undergo a fitness for duty examination, an evaluation of her EMS skills, and her driving skills.

73. On or about April 15, 2004 Deputy Chief Mickey Radez and others held a meeting with Coffman wherein Coffman complained that Defendant was discriminating against her on the basis of her gender and size by making her undergo the driving and paramedic skills evaluation.

74. On or about April 19, 2004, Deputy Chief Mickey Radez ordered Plaintiff to undergo a fitness for duty mental examination.

75. On or about May 13, 2004, Battalion Chief Al Stovall, ordered Coffman to participate in the Employee Assistance Program and undergo further mental examination and evaluation with Dr. William Shipley of the White River Psychology, Inc.

76. After Dr. Shipley opined on June 10, 2004 that Plaintiff had no intellectual or emotional difficulties that would preclude her from performing her job, Defendant referred

14

Coffman to yet another mental examination on June 21, 2004, at IPSP without justification of business necessity.

77.  As a result of the June 21, 2004 fitness for duty mental examination conducted by ISPS, Coffman was declared not fit for duty and was suspended from her duties as fire fighter.

78.  Defendant continued to refer Coffman for subsequent fitness for duty mental evaluations until Plaintiff was finally declared "fit for duty" by IPSP on September 1, 2004.

**COUNT III**

**CIVIL RIGHTS VIOLATONS**

Plaintiff incorporates by reference paragraphs 1 – 78 above.

79.  Defendant Mickey Radez violated Coffman's constitutional right to privacy by recommending she be referred to a fitness for mental examination on April 10, 2004, and subsequently ordering her to undergo a fitness for duty mental examination on April 21, 2004.

80.  Defendant Charles Miller violated Coffman's constitutional right to privacy by recommending on or about April 11, 2004 that she be referred to a fitness for duty mental examination.

81.  Defendant Charles Miller violated Coffman's constitutional right to due process by depriving Coffman of her property rights by placing her on a limited duty status and ordering

15

that she not be permitted to perform duties as a fire fighter; by ordering that Coffman undergo further training and evaluation of her EMS skills; and by ordering that Coffman undergo further evaluation of her driving skills.

82. Defendant Al Stovall violated Coffman's constitutional right to privacy by ordering Coffman, on or about May 3, 2004, to undergo an urinanalysis without probable cause.

83. Defendant Al Stovall violated Coffman's constitutional right to privacy by ordering Coffman, on or about May 13, 2004, to undergo a mental evaluation and treatment through IFD's Employee Assistance Program.

84. All Defendants were acting within the scope of their employment and under color of state law.

**COUNT IV**

**RETALIATION CLAIM**

**OPEN RECORDS ACCESS ACT**

Plaintiff incorporates by reference paragraphs 1 – 84 above.

85. At various times between October 2003 and December 2003, Plaintiff asked Defendant officials for documentation related to her alleged driving deficiencies.

86. Defendant refused to provide the requested documents.

87. Because IFD had refused to provide requested documents, in December 2003 Plaintiff requested various records under the

Indiana Open Records Access law pertaining to Defendants' evaluation of her driving skills.

88. On December 23, 2003, IFD, through Corporation counsel, Ellen Gabovitch, denied Coffman's request for her records.

89. In May 2004 Coffman consulted with the Indiana State Open Records Counselor, Michael Hurst, and obtained an opinion from him on May 18, 2004 that Indianapolis Fire Department was required to release to her the requested records.

90. On May 20, 2004, Coffman filed another request for her records.

91. IFD declined to give Plaintiff the requested records.

92. On June 4, 2004, Coffman filed a formal complaint with the Indiana State Office of the Public Access Counselor of non-compliance with the Indiana Public Records Access.

93. On June 18, 2004, IFD, through Corporation counsel, Ellen Gabovitch, acknowledged receipt of Coffman's May 2004 request and the opinion of the Indiana state Public Access Counselor's opinion which opined that Coffman was entitled to the requested records.

94. In June 2004, Defendant retaliated against Coffman for exercising her rights under Indiana law in requesting her records and in seeking the advice and assistance of the Indiana State Open Records Counselor by ordering Coffman to undergo yet another fitness for duty mental examination on

June 21, 2004 despite the fact Dr. Shipley had issued a medical opinion that Coffman was fit for duty.

95. Upon the June 21, 2004 mental examination by the IPSP, the examining psychologist declared Coffman **not** fit for duty.

96. Defendant's actions in referring Coffman to a fitness for duty mental exam is retaliation for exercising her statutory rights under the Indiana Open Records Act, is contrary to public policy and, if permitted to stand without legal consequences, will have a significant chilling effect on Indiana citizens who invoke their rights under the statute.

## REQUESTED RELIEF

**WHEREFORE,** Plaintiff requests the Court grant judgment against all defendants for:

a.   compensatory damages to the plaintiff for emotional pain and suffering, inconvenience, medical bills, dissipated sick leave, and all other consequential pecuniary losses, such compensation to be determined at trial;

b.   reasonable attorney fees and costs;

c.   permanent injunction enjoining Defendants from referring employees to fitness for duty mental examinations without probable cause;

18

d.   injunctive relief requiring Indianapolis Fire Department
     establish a neutral and objective system of referring
     employees to a fitness for duty mental examinations;

e.   pre-judgment and post-judgment interest on all damages
     awarded, to the maximum extent allowed by law; and,

f.   Grant such other relief as the Court deems just and
     proper.

### DEMAND FOR JURY TRIAL

Plaintiff requests trial by jury on all issues so triable.


                         Respectfully Submitted,


                         /s/ Tae Sture
                         _____
                         Tae Sture, Attorney No. 25120-29
                         Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the forgoing <u>Amended Complaint</u> was served upon Counsel for Defendants via the Electronic Court Filing System administered by the U.S. District Court for the Southern District of Indiana this 5th day of October 2005.

/s/ Tae Sture
_____
Tae Sture #25120-29
Attorney for Plaintiff


<u>Attorney for Plaintiff</u>
Tae Sture
155 E. Market Street, Suite 400
Indianapolis, IN 46204
Phone: (317) 632-9411
Fax: (317) 236-0481


<u>Attorneys for Defendants</u>
Allison Wells Gritton
Office of Corporate Counsel
1601 City/County Building
200 East Washington St.
Indianapolis, IN 46204
Phone: (317) 327-4055
Fax: (317) 327-3968

Robin C. Clay
Office of Corporate Counsel
1601 City/County Building
200 East Washington St.
Indianapolis, IN 46204
Phone: (317) 327-4055
Fax: (317) 327-3968