UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| TONYA COFFMAN, | ) | |
|        Plaintiff, | ) | |
| | ) | |
|   vs. | ) | 1:05-cv-0199-RLY-VSS |
| | ) | |
| INDIANAPOLIS FIRE DEPARTMENT, | ) | |
| MICKEY RADEZ, CHARLES I. MILLER, and | ) | |
| AL STOVALL, | ) | |
|        Defendants. | ) | |

**ENTRY ON DEFENDANTS' MOTION FOR PARTIAL DISMISSAL**

Plaintiff, Tonya Coffman, is employed by the Indianapolis Fire Department.  She
has filed a four-count complaint against the department and four of her supervisors.
Count I of her Amended Complaint alleges a violation of Title VII of the Civil Rights Act
of 1964, 42 U.S.C. § 2000 *et seq*.; Count II alleges a violation of the Americans with
Disabilities Act; Count III asserts that Coffman's constitutional rights to privacy and due
process were violated by the individual Defendants; and Count IV asserts a state law
claim for damages premised upon the contention that Defendants retaliated against her for
having pursued her statutory right to seek documentation from the department under
Indiana public access laws.

The individual Defendants seek dismissal from all four counts of the Amended
Complaint.  They argue, and Coffman has conceded, that they may not be pursued

individually under Title VII or the ADA and should therefore be dismissed from Counts I and II.  They also claim that Count III fails to state a claim for relief and even if it does state a claim they are entitled to qualified immunity.  Finally, all Defendants seek to have Count IV dismissed for failure to state a claim upon which relief may be granted. Plaintiff opposes the dismissal of Counts III and IV, though she admits that Count IV extends an existing state law theory of liability into previously uncharted waters.

## I.      Standard of Review

When reviewing a motion to dismiss, the court views the complaint in a light most favorable to the plaintiff.  *Lee v. City of Chicago*, 330 F.3d 456, 459 (7th Cir. 2003).  This includes accepting as true all well-pleaded allegations and making any reasonable inferences from the allegations in her favor.  *Id.*  The motion will be granted only if it appears beyond a reasonable doubt that the plaintiff cannot prove any facts which would support a claim for relief.  *Manning v. Miller*, 355 F.3d 1028, 1031 (7th Cir. 2004). Unless the court converts a motion to dismiss for failure to state a claim to one for summary judgment, the court may consider only the pleadings as filed by the parties. *Alioto v. Marshall Fields & Co.*, 77 F.3d 934, 936 (7th Cir. 1996).

## II.     Factual Allegations

Plaintiff began employment with the Indianapolis Fire Department ("IFD") on April 4, 2001.  Initially qualified as an engineer, Coffman became qualified as a

paramedic as well on October 21, 2003.  Up through that time, Coffman had no notice of

any concerns regarding her performance at work.  In late October of 2003, Coffman was

the subject of an order from a Deputy Fire Chief which forbid her from driving any IFD

fire fighting apparatus.  In December of that year, pursuant to Indiana's Access to Public

Records Act, Coffman sought copies of any and all written records pertaining to her

which were in the possession of the IFD.  Also in December, Coffman was ordered to

undergo a driving evaluation to determine if she was able to reach the operating pedals

and steering wheel of the various IFD vehicles.  She passed that evaluation.

In January 2004, after a complaint was registered by a co-worker regarding

Coffman's poor operation of a department vehicle, both Coffman's driving and paramedic

skills became the subject of scrutiny from various supervisors and department officers,

including the individually named Defendants.  Coffman met with department officials

with regard to the co-worker's complaint and explained that it had been snowing on the

day the co-worker had ridden with her, that the co-worker did not appear to like her and

that the bad weather had contributed to any safety concerns that were expressed.

Regardless of her explanation, Coffman was ordered to undergo another driving

evaluation.  Coffman objected, but again she passed the evaluation.

On April 9, 2004, a Lieutenant in the department wrote a memo questioning

Coffman's "mental well being".  A Captain also wrote a memo which inferred that

Coffman should undergo a "fitness for duty evaluation", following which Defendants

Mickey Radez, a Deputy Chief, and Charles Miller, a Battalion Chief, both made formal recommendations to their superiors that Coffman undergo a fitness for duty exam and receive additional EMS procedures training.  Shortly thereafter, Coffman was required to undergo an evaluation of her paramedic skills.   The results of that evaluation were not provided to her.

On April 19, 2004, Deputy Chief Radez ordered Coffman to undergo a fitness exam and directed Deputy Chief Longerich to oversee the issue of Coffman's need for further EMS and suppression training.  Under objection, but in fear of losing her job, Coffman went through the fitness for duty examination at the Institute for Public Safety Personnel ("IPSP") and signed a waiver of confidentiality, which allowed for the results of the exam to be shared with the IFD.  The doctor that administered the examination recommended that Coffman be put on "light duty".

On May 3, 2004, Defendant Al Stovall, Battalion Chief, ordered Coffman to submit to an urinalysis.  Ten days later he ordered Coffman to participate in the IFD Employee Assistance Plan ("EAP") and required her to use accumulated sick days to participate in the EAP sessions.  Coffman responded by making a public access request to Deputy Chief Radez, Deputy Chief Longerich and IFD's Human Resources for documents pertaining to any decisions they made regarding her employment and included with the request an opinion from the Indiana State Access Counselor indicating that she was entitled to such documentation.  She also participated in the EAP sessions, which

resulted in a letter from the mental health professional in charge of the sessions to Battalion Chief Stovall which said that he had "not noted any intellectual or emotional difficulties which would interfere with her ability to perform her job."

In June, Coffman filed a formal complaint with the Indiana Public Access Counselor regarding her efforts to obtain IFD documents that related to decisions made about her status.  Later that month she was again ordered to undergo a fitness for duty examination.  This time the same doctor at the IPSP who had passed her the first time found her unfit for duty.  Coffman filed a charge of discrimination with the Equal Employment Opportunity Commission on June 16, 2004, in which she claimed that IFD discriminated against her on basis of gender and disability and also retaliated against her for protesting the discrimination.  After receiving her notice of right to sue from the EEOC, Coffman filed this lawsuit.

**III.    Discussion**

Defendants argue that Count III, which raises civil rights claims against the individual Defendants under 42 U.S.C. § 1983, is misplaced and fails to state a claim upon which relief can be granted.  In support of this motion the Defendants rely on language in an IFD General Order which they say provides the Defendants with the right to subject any firefighter to a fitness for duty evaluation.  They also point to what they describe as an admission in Plaintiff's EEOC charge.  If the court were to consider either

of these documents it would be stepping outside the pleadings and would be required to treat the motion as one for summary judgment and to give fair warning and an opportunity to respond to the Plaintiff. *Alioto*, 77 F.3d at 936. The Defendants have not asked the court to treat their motion as one for summary judgment and the court chooses not to venture outside the pleadings at this early stage.

Plaintiff contends that her right to due process and her right to privacy have been violated by the individual Defendants. While it is difficult at this point to see or understand how Coffman's privacy rights might have been infringed as a result of her being referred for fitness or mental health examinations, the threshold at this point for stating a cause of action is a low one. The federal notice pleading standard applicable under Fed.R.Civ.P. 8 relies on liberal discovery and motions for summary judgment (as opposed to motions to dismiss) to define disputed facts and issues and to dispose of unmeritorious claims. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512-513 (2002). Coffman has a privacy right and, as a government employee, she also is entitled to due process under many employment related circumstances. The individual Defendants could be held liable for violating those rights.

The same Defendants could also be entitled to qualified immunity. Whether or not the circumstances are such that qualified immunity should apply to the individual defendants is an issue which is dependent upon the facts as they are developed through discovery and whether those facts serve to flesh out an actual violation of Coffman's

constitutional rights.  *See Morrell v. Mock,* 270 F.3d 1090, 1094 (7th Cir. 2001)(setting forth qualified immunity two-part test of whether a plaintiff has supported a claim for a violation of their constitutional rights and whether or not those rights were so clearly established that the defendant public official would understand that he was acting in violation thereof).  A Rule 12(b)(6) motion filed at this stage of the litigation is not often an appropriate vehicle to assert qualified immunity.  "Considerations of immunity or other affirmative defenses rarely come to fore until an answer is filed."  *Jacobs v. City of Chicago*, 215 F.3d 758, 775 (7th Cir. 2000).  It is therefore premature to pass judgment on the viability of Count III.

In Count IV of her Amended Complaint, Coffman becomes creative.  She asserts a retaliation claim with the underlying protected conduct being her request for IFD records under Indiana's public access laws.  There is no federal cause of action for retaliation where the underlying conduct is an employee's request for an employer's records - public or otherwise.  Indiana's public records access laws, Ind. Code §§ 5-14-3-1 *et seq.*, do not provide Coffman with a statutory basis for a retaliation lawsuit either.  However, as a basis for her claim, Plaintiff relies on an Indiana common law development that is often referred to as the "*Frampton*" public policy exception.  Its roots are in the 1973 Indiana Supreme Court decision of *Frampton v. Central Indiana Gas Co.*, 297 N.E.2d 425 (Ind. 1973), where the court decided that when "an employee is discharged solely for exercising a statutorily conferred right an exception to the general rule must be

recognized." *Id.* at 428.  The "general rule" referred to is Indiana's common law treatment of employees as "at-will" employees who may be discharged without cause, unless otherwise expressed in an agreement between employer and employee.  *Id.*

The plaintiff in *Frampton* claimed that she had been terminated because she sought workers compensation benefits which were provided for by law. *Id.* at 426.  However, since its inception, use of the *Frampton* exception by plaintiff employees as a method to combat retaliatory action by an employer has met with limited success due to a very narrow construction of the exception.  *See Smith v. Electrical System Division of Bristol Corporation*, 557 N.E.2d 711, 712 (Ind. App. 2005).

In *McClanahan v. Remington Freight Lines, Inc.*, 517 N.E.2d 390 (Ind. 1988), the Indiana Supreme Court expanded the *Frampton* holding to include an exception to at-will employment where an employee is discharged for failing to break a law.  The plaintiff in *McClanahan* had refused to illegally run an overweight truck over Illinois highways. *Id.* at 391.  *McClanahan* and *Frampton* now combine to interpret the Indiana public policy exception as applying to forbid the termination of an employee for failing to break a law as well as for exercising a right provided for by statute.  There has yet to be a published opinion from the Indiana courts discussing the application of the *Frampton* exception to an employee's pursuit of personnel records or similar materials under the public access laws.  Furthermore, no case has discussed the application of the *Frampton* exception to retaliation by the employer short of discharge.

The question of whether the *Frampton* exception, or more precisely its public policy interpretation, should apply to adverse employment actions which fall short of discharge seems relatively a simple one to answer. While the term "exception" has been used to describe the effect of the *Frampton* decision on the common law at-will employment rule, the essence of the decision is not the creation of an exception to at-will employment but the recognition of a public policy that rejects the notion that an employer can take adverse action against an employee for exercising a right that the legislature has bestowed upon them. If Ms. Frampton had not been fired, but instead her employer reduced her wage by 50 per cent, the analysis would not change. If the employer is still taking punitive action against her because of her pursuit of a statutory right, it would be contrary to public policy in Indiana. Therefore, this court finds that Indiana courts would not require that an employer's adverse action reach the level of a termination before she can employ the *Frampton* analysis to seek a remedy.

The question of whether Indiana courts would extend the *Frampton* analysis to allow an employee to pursue a remedy for an employer's retaliation which was based on the employee having pursued public documents from the employer, is not so easily answered. As pointed out earlier, the courts, both federal and Indiana, have shied away from applying the *Frampton* public policy exception in less than the precise circumstances previously explored in the case law. *See Groce v. Eli Lilly & Co.*, 193 F.3d 496, 503 (7th Cir. 1999); *Wior v. Anchor Industries, Inc.*, 669 N.E.2d 172, 177 n. 5

(Ind. 1996).  The Plaintiff here has not pointed to any case other than the *Frampton* decision itself to support her argument for applying the exception.  However, the briefing from both sides on this issue is lacking in depth, the discussions consisting of little more than  superficial recognition of the exception and the reluctance of courts to extend it. Before this court throws out Coffman's only state law claim, especially at this early stage, a deeper analysis is required.

At first blush, the court is inclined to view the *Frampton* analysis as applicable in this situation.  Coffman has a statutory right to seek public documentation that falls into the domain of Indiana's public access laws.  She has alleged that she even received an opinion from the Public Access Counselor indicating that she was entitled to what she sought under those public access laws.  However, while the statutory scheme provides for a method to remedy the failure of the public entity to release the documents, *see* Ind. Code § 5-14-3-9, it does not provide for a remedy against retaliation by the public entity against those who rightfully seek such documentation.  This lack of statutory remedy for retaliation within the public access laws is, in part, critical to an examination of whether the *Frampton* analysis should apply.  *See Carver v. Electronic Data Systems Corp.*, 2005 WL 552466 at *7 (S.D. Ind. Feb. 11, 2005)(noting that the lack of any effective remedy for retaliation might otherwise negate the protections of the statute, thereby increasing the relevance of the *Frampton* analysis).  Another area of import in deciding whether or not *Frampton* might apply is the type of public policy that is embodied in the statutory

scheme that provides the right which the plaintiff is said to have exercised.  *See Bentz Metal Products Co., Inc v. Stephans*, 657 N.E.2d 1245, 1248 (Ind. App. 1995).  Finally, there is the question of whether individual supervisors or only the employing entity can be held liable for a *Frampton* type claim.  In any event, at this stage the court will not dismiss the claim without a more in depth examination, perhaps at the summary judgment stage if the case is not resolved sooner.

## IV.    Conclusion

For the reasons discussed in this entry, Defendants' Motion for Partial Dismissal for Failure to State a Claim (Docket #27) is **GRANTED IN PART**, insofar as the Title VII and ADA claims in Counts I and II of Plaintiff's Amended Complaint are dismissed as against the individual Defendants, Mickey Radez, Charles I. Miller, and Al Stovall; however, in all other respects the motion is **DENIED**.

**IT IS SO ORDERED, this 12th day of July 2006.**

RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Electronic Copies to:

Robin C. Clay
OFFICE OF CORPORATION COUNSEL
rclay@indygov.org

Allison Wells Gritton
OFFICE OF CORPORATION COUNSEL
agritton@indygov.org

Tae K. Sture
STURE LEGAL SERVICES LLC
tsture99@yahoo.com